## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

CALIN SPRAUVE,                          :
                                        :        CIVIL ACTION
        Plaintiff,            :
                                        :
        v.                    :        No. 09-165
                                        :
CBI ACQUISITIONS, LLC,                  :
d/b/a CANEEL BAY RESORT                 :
        Defendant.            :

2010 SEP -2 PM 12: 21 RECEIVED CLERK OF THE DIST... ST...

### MEMORANDUM

BUCKWALTER, S.J.                                          August 31, 2010

       This case comes before the Court on the Motion of Defendant CBI Acquisitions, LLC ("CBI") to Dismiss for Failure to State a Claim, or in the alternative, for Summary Judgment. For the reasons discussed below, Defendant's Motion to Dismiss is granted in part, and its Motion for Summary Judgment is denied without prejudice to renewal at a later stage of the proceedings.

## I.    FACTUAL BACKGROUND[1]

       This case stems from Plaintiff Calin Sprauve's allegations of unlawful termination from his employment as a boat captain with Defendant, which operates Caneel Bay, a resort in St. John, United States Virgin Islands. (Am. Compl. ¶¶ 2-5.) For thirty-five years, Plaintiff has been a 100-ton licensed boat captain without incident or any sanction from the United States Coast Guard ("Coast Guard"). (Id. ¶ 8.) From 1997 until December 29, 2008, Plaintiff worked as a captain for Defendant, operating Defendant's vessels in domestic and international waters. (Id. ¶¶ 4, 9.)

---

[1] For the purposes of this opinion, the Court accepts as true Plaintiff's factual allegations. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

## A. Events Leading up to Termination

On or about December 10, 2008, Plaintiff – engaged in his duties as captain – arrived at the helm of one of Defendant's boats, the "Caneel Bay III," which at that time was moored to the dock. (Id. ¶¶ 9-10.) Without prior notice, Defendant's Security Director, Rupert Browne, boarded the vessel and instructed Plaintiff to go to the St. John Clinic for a sobriety test. (Id. ¶ 10.) Nikolay Hotze, Defendant's Managing Director, had also boarded the vessel with Browne, although he said nothing. (Id. ¶ 10.) Since Browne was not his supervisor, Plaintiff was "[c]onfused as to why Defendant's security guard would have instructed him to go anywhere, including to the St. John Clinic, which is not certified by DOT to test marine personnel for substance use." (Id. ¶ 11.) Plaintiff, thus, disembarked the vessel and went to his "marine supervisor," Calvin Thomas. (Id. ¶ 11.) Plaintiff asked Thomas "whether a sobriety test was actually desired, and, if so, to insist on being tested immediately by a DOT certified facility." (Id. ¶ 11.) Thomas then called Defendant's security guard, who advised him that "he 'could not discuss it'" and that they would discuss it further tomorrow. (Id. ¶ 12.) "Accordingly, Plaintiff was *not* instructed by his supervisor to take a urine or blood test at all." (Id. ¶ 12.) On or about December 31, 2008, without an opportunity for Plaintiff to be heard, Defendant sent a Notice of Termination to Plaintiff. (Id. ¶ 14.)[2]

The Notice of Termination Defendant sent to Plaintiff recalled the series of events leading up to and including the confrontation aboard the Caneel Bay III between Plaintiff and the

---

[2] Previously, Plaintiff had never failed the random urine and blood tests conducted by the Coast Guard, nor had Defendant warned Plaintiff that it had concerns about his handling of the vessels that he operated. (Id. ¶ 13.)

Security Director as well as the reasons for terminating Plaintiff's employment. (Id., Ex. 2.) The Notice, addressing Plaintiff in the second person, cited a report that Plaintiff was "observed and determined to be intoxicated while on duty" operating the Caneel Bay III, "with approximately fifteen (15) passengers on board." (Id.) The Notice further provided that the Security Director "was called and instructed to remove you from the vessel, and for you to accompany him to the Myrah Keating Smith Hospital to take a sobriety test. You refused to comply with this request." (Id.) At that time, as the Notice described, the Security Director "observed that you were stumbling with the luggage and there was a heavy smell of alcohol from your breath, and from his observation, he determined you were intoxicated. (Id.) Finally, the Notice cited Plaintiff's violation of Caneel Bay's Code of Conduct and the following reasons for Plaintiff's firing: "[1] Refusal to take a sobriety test to certify that you were not intoxicated. [2] Failure to obey a reasonable request from a direct supervisor. [3] Failure to exercise good judgment when spoken to by senior managers. [4] Disrespect and [being] verbally abusive to a senior manager." (Id.)

## B. Report to the United States Coast Guard

On or about January 1, 2009, Defendant notified the Coast Guard that Plaintiff had been consuming alcohol while operating a vessel. (Id. ¶ 21.) This report led to a Coast Guard investigation into the allegations. In the course of the investigation, "Plaintiff conferred with the Coast Guard investigator on several occasions, and provided written statements of the crewmen working with Plaintiff on the day of the incident, as well as the statement of a person who had observed Plaintiff at the exact time of the incident." (Id. ¶ 22.) At the conclusion of the investigation, "the Coast Guard refused to press charges of any kind against . . . Plaintiff." (Id. ¶ 22.)

3

## II. PROCEDURAL BACKGROUND

### A. Virgin Islands Department of Labor Proceeding

On January 29, 2009, Plaintiff filed a complaint against Defendant with the Virgin Islands Department of Labor ("DOL") that alleged wrongful termination under the Virgin Islands Wrongful Discharge Act ("WDA"), 24 V.I. §§ 76-79. (Def.'s Mot. Dismiss, Ex. 1, DOL Compl., Jan. 29, 2009 ("DOL Compl.").) On June 3, 2009, a notice of Preliminary Hearing and Pre-Hearing Conference, scheduled for 11.30 a.m. on June 25, 2009 at the Virgin Islands Department of Labor, St. Thomas, was mailed to the Plaintiff and Defendant. (Id., Ex. 2, Op. and Order, Sprauve v. CBI Acquisitions, Inc., No. WD-050-09-STT (V.I. Dept. of Labor, Hearings and Appeals Unit Aug. 12, 2009) ("DOL Opinion").) As indicated in the Notice, the Virgin Islands Department of Labor conducted a Preliminary Hearing on June 25, 2009. (Id. at 1.) Administrative Law Judge James W. Kitson ("ALJ"), appointed by the Virgin Islands Commissioner of Labor, presided over the hearing, where Plaintiff appeared in person and with his attorney, J. Brion Morrisette. (Id. at 1,4.) Defendant did not appear at the Hearing. (Id. at 1.)

At the Hearing, Plaintiff was sworn in and testified under oath. (Id. at 2.) Plaintiff testified to the following: "[Plaintiff] worked for Defendant as a boat captain for over thirty years[,] [t]wo crew members assisted Plaintiff in operating his vessel[,] as captain, [Plaintiff] was 'master of the vessel[,]' [and] Plaintiff piloted Defendant's boats within Territorial Waters between St. John and St. Thomas." (Id.)

Although Defendant failed to appear for the Preliminary Hearing, it submitted a Motion for Reconsideration on July 9, 2009, in case the DOL had or was about to enter a default in Plaintiff's favor. (Pl.'s Opp. Mot. Dismiss, Ex. 2 ("Motion for Reconsideration").) In its

4

Motion for Reconsideration, Defendant requested that if the DOL had yet to issue an order arising from Defendant's failure to appear at the Preliminary Hearing and Pre-Hearing Conference, the DOL convert its Motion for Reconsideration into a motion to dismiss. (Id. at 5.) As a basis for dismissal, Defendant argued in its Motion for Reconsideration that Plaintiff, as a boat captain, is a seaman, and thus Plaintiff's claim should be dismissed because the WDA exempts seaman from its coverage. (Id. at 4-5.)

Subsequently, on August 12, 2009, the ALJ issued a memorandum opinion and order dismissing Plaintiff's DOL Complaint since Plaintiff – as "master of the vessel" and "chiefly responsible for the navigation" – was a seaman, and was therefore not an employee within the meaning of the WDA. (DOL Opinion at 4.) The Judge's conclusion that Plaintiff did not fall under the definition of employee under the WDA deprived the DOL of jurisdiction to hear the claim, and thus required dismissal of Plaintiff's complaint. (Id.) The DOL Opinion was served on both parties the same day it was issued. (Id. at 5.) Pursuant to 24 V.I. Code R. § 77-70(B), the DOL Opinion became final ten days after it had been served, which, by computing time according to Rule 6 of the Federal Rules of Civil Procedure and Part I, Rule 9 of the Rules Governing the Superior Court of the Virgin Islands, occurred on September 1, 2009. By October 2, 2009, thirty days from the date the DOL Opinion became final, Plaintiff could have filed a petition for review with the Superior Court of the Virgin Islands, as provided for by 24 V.I. Code R. § 77-73. Plaintiff failed to do so.

**B. Virgin Islands Superior Court Proceeding and Removal**

On October 8, 2009, Plaintiff filed a civil action against Defendant in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John. (Def.'s Not. Removal, Ex. 1.) This

action – just as Plaintiff's DOL Complaint – sought redress under the WDA for the series of events that culminated in Defendant's termination of Plaintiff's employment. (Id. at 3.) The Superior Court Complaint also asserted defamation claims and an alleged scheme to deprive Plaintiff of his "accrued pension, vacation time, and other benefits accrued to Plaintiff by virtue of his long employment with . . . [Defendant]." (Id. at 4-5.) On November 17, 2009, Defendant filed a Notice of Removal with the United States District Court for the Virgin Islands, Division of St. Thomas and St. John. In its Notice, Defendant sought to remove the instant action to this Court, pursuant to 28 U.S.C. § 1441(a), on the basis of federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff's claim of discharge based on a "benefits-defeating" motive invoked the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Id. at 2-3.)

### C. Present Procedural Posture

Following removal to the district court, Plaintiff filed a Motion for Leave to File an Amended Complaint on January 21, 2010. The Motion was granted on January 27, 2010. Five days later, on February 2, 2010, Defendant filed a Motion to Dismiss for Failure to State a Claim, or in the alternative, for Summary Judgment on the Amended Complaint. Plaintiff filed a Response in Opposition on March 26, 2010, arguing against granting dismissal or summary judgment. Defendant filed its Reply on April 8, 2010.

## III.    STANDARD OF REVIEW[3]

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading. FED. R. CIV. P. 12(b)(6). The starting point in analyzing a pleading is Rule 8(a), which requires that a pleading, at a minimum, consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Regardless of its exact form, however, for a pleading to withstand a 12(b)(6) motion, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When read in the light most favorable to the plaintiff, a pleading that provides sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" meets the required level of "facial plausibility." Iqbal, 129 S. Ct. at 1949; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (following the dictates of Iqbal in extending to all civil pleadings the standard of review established in Twombly). On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Taken together then, in evaluating a pleading's sufficiency in relation to a Rule 12(b)(6) motion to dismiss, a "District Court must accept all of [a pleading's] well-pleaded facts as true" and draw all reasonable inferences therefrom in the light most favorable to the plaintiff, "but may disregard any legal conclusions[,]" in determining whether the plaintiff has a "'plausible claim for relief.'" Fowler, 578 F.3d at 210-211 (quoting Iqbal, 129 S. Ct. at 1949-50).

---

[3] As explained below, the Court provides only the standard of a review pertaining to a motion to dismiss, because, at this juncture, it declines to consider Defendant's Motion for Summary Judgment.

## IV.  DISCUSSION

In connection with Defendant's termination of Plaintiff's employment, Plaintiff asserts

five claims in his Amended Complaint:  (1) violation of the WDA; (2) "wrongful discharge . . .

under common law"; (3-4) defamation in reporting to the Coast Guard that Plaintiff had been

intoxicated while operating a vessel; and (5) intentional discharge of Plaintiff so as to deprive

him of his accrued pension benefits.

In its Motion to Dismiss, Defendant attacks Plaintiff's Complaint on several grounds.

First, Defendant argues that Plaintiff's WDA claims are barred by res judicata.  Second, it asserts

that Virgin Islands law does not support a common law cause of action for "wrongful discharge."

Finally, Defendant contends that the absolute privilege protecting statements made to law

enforcement to initiate criminal investigations shields it from liability for the statements it made

to the Coast Guard.  The Court will address these arguments in turn, but only after resolving the

status of Defendant's Motion to Dismiss as a motion, in the alternative, for summary judgment.


### A.  Scope of the Instant Memorandum

At the outset, the Court declines to consider Defendant's present Motion as a request for

summary judgment.  When presented with a motion to dismiss, or in the alternative, for summary

judgment, the court retains discretion to determine which path to take.  Pryor v. Nat'l Collegiate

Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (finding no error in the district court's decision

to address a motion to dismiss, or in the alternative, for summary judgment, as solely a motion to

dismiss); see also 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1366 (3d. ed. 2009).  Should the court restrict its review to "allegations contained

8

in the complaint, exhibits attached to the complaint and matters of public record," the standard of review applicable to a motion to dismiss is required. City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). Additionally, without disturbing the motion to dismiss standard of review, "[a] 'court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the document.'" Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir. 2008) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196-97 (3d Cir. 1993)). Should it consider matters outside of these categories, however, the court must decide the motion as one for summary judgment in accord with Rule 56 and the required notice to the parties under Rule 12(d). See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) ("'[I]f matters outside the pleadings are presented to the district court on a motion under Rules 12(b)(6) or 12(c), and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles.'" (citing, among other sources, WRIGHT & MILLER, *supra*, § 1366)); Claret Capital Nominees v. Benett, No. CIV.A.09-3532, 2009 WL 4362821, at *2 (E.D. Pa. Nov. 30, 2009) (addressing the provisions of Rule 12(d)).

Here, the Court will consider Defendant's Motion as a motion to dismiss, and reserve summary judgment considerations for another day. The case is still in its early stages, and may evolve with discovery. Accordingly, the Court will limit its review of the materials Plaintiff and Defendant submitted to comport with the Rule 12(b)(6) standard of review. The Court notes that the present standard of review permits it to review the DOL Opinion, as it is a matter of public record. See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d

410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings . . . .").

## B. The Preclusive Effect of an Administrative Adjudication before the Virgin Islands Department of Labor

Defendant's first argument in its Motion to Dismiss requires the Court to consider whether the DOL Administrative Law Judge's ruling that Plaintiff, as a seaman, does not fall under the purview of the WDA precludes this Court from considering the same claim. The Court finds that the doctrine of res judicata, claim preclusion in particular, bars Plaintiff's attempt to assert for a second time his WDA claim.

The doctrine of res judicata prevents parties from repeatedly pursuing matters already decided, with the "'dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *In re* Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002) (quoting Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979)). In its broadest definition, res judicata encompasses both claim and issue preclusion, two separate theories of estoppel that nonetheless share certain overlap. See United States v. Five Unlabeled Boxes, 572 F.3d 169, 173-74 (2009) (citing Venuto v. Witco, 117 F.3d 754, 758 n.5 (3d Cir. 1997)). The Third Circuit has explained:

> "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim."

Continental, 279 F.3d at 226 (3d Cir. 2002) (quoting New Hampshire v. Maine, 532 U.S. 742 (2001)).

In the case at bar, the Court focuses on claim preclusion, as it is the doctrine both parties argue and the one most applicable to the present procedural posture, where Plaintiff has raised the identical claim of a WDA violation first before the DOL and now before this Court.

In determining whether claim preclusion applies where claims have been brought under both territorial and federal law, the Court first "look[s] to the law of the adjudicating state." See Huck ex rel. Sea Air Shuttle Corp. v. Dawson, 106 F.3d 45, 48 (3d Cir.), cert. denied, 520 U.S. 1276 (1997) (applying Virgin Islands claim preclusion law where both federal and territorial claims were at issue). "For claim preclusion to apply, the following three elements must be present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" U.S. Dep't of Agriculture Rural Hous. v. Phillips, No. CIV.A.08-32, 2010 WL 1529297, at *6 (D.V.I. Apr. 15, 2010) (quoting Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 2001); see also Huck, 106 F.3d at 48.[4] "The defense of claim preclusion . . . may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision." Toscano v. Conn. Gen. Life Ins. Co., 288 Fed. Appx. 36, 38 (3d Cir. 2008) (citing Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir.1972)). Moreover, "[t]he party seeking to take

---

[4] This test for claim preclusion is well-settled and shared by the Third Circuit (see *In re* Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008)) as well as the Restatement of Judgments (see RESTATEMENT (SECOND) OF JUDGMENTS §§ 18-26 (1982)). The Court notes the significance of the Restatement sharing the identical test, as absent local law or precedent to the contrary, the Virgin Islands – pursuant to 1 V.I.C. § 4 – has adopted the Restatements as the "rules of decision" in its courts. See Huck, 106 F.3d at 48 (citing 1 V.I.C. § 4; Miller v. Christian, 958 F.2d 1234, 1237 (3d Cir. 1992)).

advantage of claim preclusion has the burden of establishing it." <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 158 (3d Cir. 2001).

Plaintiff and Defendant do not contest that the same party has initiated two suits on the same cause of action. Clearly here, Plaintiff – the same Calin E. Sprauve – previously brought a WDA claim before the DOL related to his firing from Defendant's employ, and now brings the same claim before this Court based upon the same set of facts. In both his complaint filed with the Superior Court of the Virgin Islands and the Complaint before this Court, Plaintiff cites 24 V.I.C. § 76 *et seq.*, as the legal authority for his respective claims. Thus, it is readily apparent that the same party has filed a subsequent suit based on the same cause of action.

While these facts satisfy the second and third elements of the Virgin Islands claim preclusion test, the first element – whether the ALJ's Memorandum Opinion and Order suffices as "a final judgment on the merits" – remains contested. Plaintiff first argues that the absence of a "full factual hearing" and a dismissal on jurisdictional grounds before the ALJ renders the Opinion too infirm to pass as a final judgment. Second, Plaintiff argues that the ALJ's determination that Plaintiff is a seaman and thus exempted from the WDA's purview does not bind this Court, because "the administrative remedies of the Department of Labor for wrongful discharge are wholly separate from the judicial remedies that are concurrently available." The Court addresses these arguments in the following two sub-sections.

### 1. A Final Judgment on the Merits

The requirement of "a final judgment on the merits" for claim preclusion to apply is more nuanced than its plain meaning provides. As Section 19 of the Restatement (Second) of Judgments phrases it, "[a] valid and final personal judgment rendered in favor of the defendant

bars another action by the plaintiff on the same claim." RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982). "'A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decrees.'" Staples v. Ruyter Bay Land Partners, LLC, No. CIV.A.05-11, 2007 WL 4800350, at *2 (D.V.I. Dec. 10, 2007) (citing Chemlen v. Bank of Ir. First Holdings, Inc., No. CIV.A.93-1592, 1993 WL 443822, at *3 (1st Cir. 1993)) (giving preclusive effect to a previous order granting summary judgment for defendants). A grant of summary judgment or a dismissal for failure to state a claim suffice as final judgments for claim preclusion purposes. RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmts. d, g (1982). While the prototypical cases for claim preclusion to apply are ones in which "the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues" or "it is determined before trial that there is no genuine dispute with respect to any material fact and that, as a matter of law, the defendant is entitled to judgment," frequently "judgments not passing directly on the substance of the claim have come to operate as a bar." RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmts. a, g (1982).[5] A dismissal on jurisdictional grounds, for instance, does not constitute a "valid final judgment" for claim preclusion purposes, except as to the question of jurisdiction itself. Etten v. Lovell

---

[5] See, e.g., George v. Martin, No.CIV.A.99-432, 2001 WL 1568480, at *5 (Terr. V.I. Dec. 10, 2007) (concluding that "an involuntary dismissal for lack of prosecution pursuant to Rule 41(b), by definition, acts as a valid final judgment on the merits"); Boyd-Richards v. Massac, No. CIV.A.90-817, 1996 WL 785995, at *4-6 (Terr. V.I. Dec. 31, 1996) (finding that dismissal for failure to prosecute an appeal from a bench trial verdict sufficed as a "final judgment on the merits"); 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4427 (2d ed. 2010) ("Default judgments are properly grounds for claim preclusion, since their basic function is to control litigating behavior and establish final disposition.").

Mfg. Co., 225 F.2d 844, 846 (3d Cir. 1955), cert. denied, 350 U.S. 966 (1956) (a dismissal for lack of jurisdiction is not a complete bar to a second action).[6] Although claim preclusion does not lend itself to easy application, it remains worth noting that this doctrine, at its most basic level, "requires that errors underlying a judgment be corrected on appeal or other available proceedings to modify the judgment or to set it aside, and not made the basis for a second action on the same claim." RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. a (1982).

Here, the DOL Opinion constitutes "a final judgment on the merits." As explained in the DOL Opinion, the ALJ determined that Plaintiff, as a boat captain, was a seaman, and thus did not meet the definition of "employee" under the WDA. (DOL Opinion at 4.) The ALJ based this conclusion on an examination of the complaint Plaintiff filed with the DOL and the testimony Plaintiff provided at a preliminary hearing, where Plaintiff, as complainant, was represented by his attorney in the current matter, J. Brion Morrisette, and respondent, the current Defendant, failed to appear. (Id. at 1.) At the hearing, Plaintiff testified under oath that he worked for Defendant as a boat captain for over thirty years; two crew members assisted him in operating the pertinent vessel; and Plaintiff captained Defendant's boats between St. John and St. Thomas. (Id. at 2.) Based upon Plaintiff's complaint and testimony before the DOL, the ALJ concluded that "[i]t is, therefore, readily apparent that Complainant, who testified that, as Captain, he was the 'master of the vessel,' and was chiefly responsible for the navigation of vessels he captained, was

---

[6] See also RESTATEMENT (SECOND) OF JUDGMENTS § 20 (1982) ("(1) A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim: (a) When the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties . . . ."); RESTATEMENT OF JUDGMENTS § 49 cmt. b (1942) ("Although, where the judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question [ – e.g., jurisdiction – ] which was litigated in the prior action.").

14

a seaman." (DOL Opinion at 4.) As the ALJ further noted, the WDA provides that the term employee as used in its text "does not include any individual employed . . . *as a seaman*." (Id. at 3 (quoting 24 V.I.C. § 62).) The ALJ went on to conclude that "[s]ince Complainant is not an employee, within the meaning of the [WDA], his complaint cannot be entertained, since this Department has jurisdiction to hear only such disputes arising between parties meeting the definition of 'employer' and 'employee' under the [WDA], as a result [of] an employer's discharge of an employee." (Id. at 4.) The ALJ proceeded to dismiss Plaintiff's complaint.

The DOL Opinion demonstrates that the ALJ considered the substance of Plaintiff's WDA claim, specifically whether Plaintiff could demonstrate that the statute applied to his termination. Only after a consideration of Plaintiff's testimony at a hearing and the papers both parties submitted did the ALJ determine that, as a matter of law, the WDA did not apply to Plaintiff because of his seaman status. The ALJ's determination is tantamount to concluding that no genuine issue of material fact existed regarding Plaintiff's status as a seaman. The main point for claim preclusion purposes, however, is that the ALJ considered the substance of the claim and issued a case-ending, dispositive opinion subject only to appeal or reconsideration. See Lewis v. Smith, 361 Fed. Appx. 421, 423-424 (3d Cir. 2010) ("[D]ismissal for failure to state a claim under Rule 12(b)(6) is a final judgment on the merits for res judicata purposes."); Ruyter Bay Land Partners, LLC, 2007 WL 4800350, at * 2 (applying claim preclusion where a previous suit ended in a grant of summary judgment); RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmts. d, g (1982) (claim preclusion applicable where before trial it is determined either that plaintiff has failed to state a claim or that there is no genuine issue of material fact). The DOL opinion thus

15

satisfies the test of claim preclusion as to the later suit brought by Plaintiff on the same cause of action.

Plaintiff's assertion that the DOL Complaint was dismissed on jurisdictional grounds, and therefore can have no preclusive effect does not sway this Court. In dismissing the DOL Complaint, the ALJ made a substantive determination regarding the merits of Plaintiff's claim, which then worked to strip the DOL of jurisdiction since Plaintiff failed to satisfy the requirements for the WDA to apply. Moreover, even if the Court viewed the DOL Opinion as a dismissal on jurisdictional grounds, it is the same jurisdictional question – whether Plaintiff is a seaman, and thus exempted from the WDA – now before the Court. This prior determination, reached after an administrative adjudication, is binding on that ground. See RESTATEMENT OF JUDGMENTS § 49 cmt. b (1942).

Additionally, Plaintiff's argument that Defendant's failure to appear somehow renders the ALJ's determination inadequate is similarly unmoving. This claim only highlights that Plaintiff could not establish his WDA claim by his own testimony and submissions. In other words, even without the challenge of cross-examination, Plaintiff's admissions revealed his lack of a claim. Additionally, Defendant eventually did have a chance to respond to Plaintiff's arguments, though solely in a brief submitted to the DOL. Yet, given this opportunity, Plaintiff chose not to challenge Defendant's arguments, as he did not respond to the brief Defendant filed with the DOL. In sum, Plaintiff had a favorable opportunity to present his side of the case in the absence of an adversary, and later had the benefit of an adversary to whom Plaintiff could have responded. Thus, Defendant's absence from the preliminary hearing in no way brings into question the fairness of the adjudication to Plaintiff.

## 2. The Preclusive Effect of a DOL Administrative Adjudication

Plaintiff next argues that an opinion and order issued after a DOL administrative adjudication cannot preclude Plaintiff from raising the identical WDA claim that was before the administrative agency. In support of this point, Plaintiff argues that "the administrative remedies of the Department of Labor for wrongful discharge are wholly separate from the judicial remedies that are concurrently available." (Pl.'s Opp. Def.'s Mot. Dismiss 5.)

Indeed, the WDA allows for concurrent jurisdiction in administrative and judicial courts. What it does not provide, however, is for jurisdiction in either forum after a "final judgment on the merits" has been entered against a complainant or plaintiff. The WDA, via 24 V.I.C. § 79, specifies that "in addition to the remedies provided by sections 77 and 78 of this chapter, any wrongfully discharged employee may bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of section 76 of this chapter." 24 V.I.C. § 79. Courts addressing the WDA have determined that it "does not require exhaustion of administrative remedies or election between administrative and judicial remedies." Hess Oil V.I. Corp. v. Richardson, 894 F. Supp. 211, 213 (D.V.I. App. Div. 1995), abrogated on other grounds by BA Properties, Inc. v. Gov't of the V.I., 299 F.3d 207 (3d Cir. 2002) In other words, "an employee who has initiated an administrative claim for wrongful discharge is not barred from filing simultaneously or subsequently a WDA action in court." Richardson, 894 F. Supp. at 213, 217 (construing WDA provisions codified in 24 V.I.C. § 79); see also Harley v. Caneel Bay, Inc., 193 F. Supp. 2d 833, 842 (D.V.I. 2002) (citing Richardson, 894 F. Supp. at 217). Nevertheless, though the WDA may allow a complainant to pursue

concurrent administrative and judicial remedies, it does not permit that individual to elect which proceeding will be binding.

Apart from the appeals process that 24 V.I.C. § 78 provides, a DOL administrative adjudication resulting in a finding against the complainant may preclude judicial relitigation of a WDA claim. Broadly speaking, "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966) (addressing collateral estoppel); see also Duvall v. U.S. Att'y Gen., 436 F.3d 382, 387 (3d Cir. 2006) (discussing Utah Constr. & Mining Co., 384 U.S. at 422, and citing it for the same proposition). As Section 83 of the Second Restatement of Judgments provides, however, "[a]n adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim." RESTATEMENT (SECOND) OF JUDGMENTS § 83(3) (1982). The Court thus examines the WDA and relevant caselaw to determine the preclusiveness of an adjudicative determination by the DOL.

In Gonzalez v. AMR, the Third Circuit addressed whether a Virgin Islands "agency determination 'may be given preclusive effect in certain circumstances where the agency is acting in a judicial capacity.'" 549 F.3d 219, 223 (2008). The Circuit found that "Virgin Islands courts do not flatly prohibit the application of issue preclusion to unreviewed agency determinations in Wrongful Discharge Act claims," and proceeded to apply Virgin Islands law to determine whether issue preclusion applied. Id. Although it decided that the circumstances in Gonzalez

18

did not warrant application of collateral estoppel, the Third Circuit confirmed that a Virgin Islands agency adjudication may exert a preclusive effect on subsequent judicial proceedings.

Moreover, the WDA provides no basis to conclude that it was the Virgin Islands Legislature's intent to allow a plaintiff to complete a DOL administrative adjudication, and to refile same WDA claim ab initio with a court in order to relitigate the claim. To do so would circumvent the appeals process in 24 V.I.C. § 70, which provides for the Superior Court of the Virgin Islands to review final orders of the DOL, requires deference on the basis of a "substantial evidence" standard for the DOL's factual findings, and restricts review solely to matters raised before the DOL with exceptions made only in extraordinary circumstances. 24 V.I.C. § 70(b); Thomas v. Abamar-BB, 934 F. Supp. 164, 166 (D.V.I. 1996) (discussing 24 V.I.C. § 70(b)). This appellate process indicates the Virgin Islands Legislature's intent to give preclusive effect to a DOL opinion outside the procedure to file a petition for judicial review. As the then Territorial Court, now Superior Court, explained so well:

> The WDA was not created as a means to forum shop. The Legislature did not intend that a petitioner would be able to re-file the case in Territorial Court after the Commissioner has made a final determination based on the evidence presented at the final administrative hearing. However, if there is a question as to the determination made, the proper remedy is a petition for writ of review to the Territorial Court.

Bachelor v. Pitt Des-Moines, Inc., No.CIV.A.98-262, 2003 WL 553266, at * (Terr. V.I. Feb. 3, 2003).

The Court finds that although the WDA allows concurrent, or even subsequent, filing of claims in administrative or judicial settings, it does not allow the identical Plaintiff to refile the same claim in court after receiving a valid and final adverse decision as the result of a DOL

19

adjudication. Here, the ALJ considered the substance of Plaintiff's claim, and determined that, as a result of his status as a seaman, Plaintiff did not fall under the purview of the WDA. The ALJ reached this conclusion in a well-reasoned Memorandum only after considering Plaintiff's filings and testimony, as well as the brief Defendants submitted. As the adjudication performed by the DOL had all the hallmarks of a binding judicial proceeding, the Court gives it the weight it deserves.

Furthermore, after the ALJ's decision became final, Plaintiff could have filed an appeal with the Superior Court of the Virgin Islands (formerly the Territorial Court) if he sought further relief. Plaintiff, however, failed to file a timely petition with the Superior Court. As addressed *supra*, the DOL Opinion became final on September 1, 2009. In order to file a timely appeal, Plaintiff would have had to file a petition for review with the Superior Court of the Virgin Islands by October 2, 2009, thirty days from when the DOL Opinion became final, as counted under Rule 6 of the Federal Rules of Civil Procedure and Part I, Rule 9 of the Rules Governing the Superior Court of the Virgin Islands. See 24 V.I. Code R. § 77-73. The failure to appeal the DOL Opinion is fatal to Plaintiff's WDA claim before this Court, because the DOL opinion, pursuant to the doctrine of claim preclusion, prevents this Court from re-deciding the same matter, between the identical party, after a judgment that suffices as final and on the merits.[7]

---

[7] While this Court spills considerable ink in addressing why the doctrine of claim preclusion requires dismissal of Plaintiff's WDA claim, it would have been less effort to dismiss the WDA claim on its face, because Plaintiff states that he is a "boat captain" in his Complaint, and captains, as the masters of their vessels, are seamen. See Foulk v. Donjon Marine Co., Inc., 144 F.3d 252, 258 (3d Cir. 1998) ("'[M]aster or member of a crew' must be seen as a refinement of the term 'seaman.'") (discussing eligibility under the Jones Act). Seamen are exempted from coverage under the WDA. See Warner v. Kmart Corp., No. CIV.A.05-128, 2009 WL 1476476, at *19 n.13 (D.V.I. May 27, 2009) (citing 24 V.I.C. § 62). Despite the Complaint's plain deficiency, the procedural bar of claim preclusion is the proper method to address Plaintiff's

Generally, a finding of claim preclusion extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982). But where "plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands . . . in a single action," a finding of claim preclusion will not prevent litigation of those claims that could not have been litigated in the first place. Id. § 26.

Here, the Department of Labor is not a court of general jurisdiction, as it is authorized only to address certain employment or labor related claims. Accordingly, the Court's finding of claim preclusion applies only to Plaintiff's WDA claim.

### C. Common Law Wrongful Discharge

Plaintiff also asserts a claim for "wrongful discharge, under common law." (Am. Compl. ¶ 19.) Virgin Islands caselaw, however, reveals no such cause of action. As "[t]his court has recently held[,] . . . where a plaintiff is unable to state a claim for wrongful discharge under the WDA, no common law action based on public policy exists." Smith v. V.I. Water and Power Auth., No. CIV.A.04-148, 2008 WL 5071685, at *9 (D.V.I. Nov. 24, 2008); see also Urgent v. Hovensa, LLC, No. CIV.A.06-105, 2008 WL 4526677, at *8 (D.V.I. Oct. 2, 2008) (concluding that the enactment of the WDA "rendered moot" any previously recognized "cause of action for wrongful discharge in violation of public policy.")

---

WDA Claim, since it supports the finality of judgments and related principles of judicial economy.

Here, Plaintiff cannot state a claim under the WDA, because, as the Court concluded above, the doctrine of claim preclusion bars him from relitigating the substance of his DOL Complaint. Absent the applicability of the WDA, there is no common law cause of action for wrongful discharge Plaintiff may claim.[8]

## D. Defendant's Allegedly Defamatory Statements

Plaintiff's claims of defamation (Counts III and IV) stem from Defendant's statements to the Coast Guard that Plaintiff "had been consuming alcoholic beverages while operating a vessel." (Compl. ¶ 21.) In response to these claims, Defendant asserts that the absolute privilege attaching to statements made to law enforcement regarding suspected criminal activities protects it from liability for these purportedly defamatory statements. The Court finds that the Virgin Islands, through its recognition of the Restatements as its rules of decision, embraces an absolute privilege for statements made to law enforcement for the purposes of reporting a violation of criminal law.

In order to state a claim for defamation under Virgin Islands law, "'the plaintiff must prove that: (1) defendant[] made a false and defamatory statement concerning another; (2) said communication was an unprivileged publication to a third party; (3) the defendant[] were at fault amounting to at least an act of negligence; and (4) the publication caused harm to the plaintiff.'" Smith v. Virgin Islands Water & Power Auth., No. CIV.A.04-148, 2008 WL 5071685, at *10 (D.V.I. Nov. 24, 2008) (quoting Flanders v. Shell Seekers, Inc., No. CIV.A.94-93 1998 WL

---

[8] Even if the parties had raised admiralty jurisdiction, seaman are generally at-will employees. Kretzer v. Hess Oil V.I. Corp., 218 F. Supp. 2d 724, 727 (D.V.I. 2002) ("under black-letter maritime law, in the absence of a contract providing to the contrary, a seaman is an at-will employee."). Further, the WDA does not serve as a public policy exception to this general rule. Id. at 728-29.

22

667782, at *3 (V.I. Terr. Aug. 11, 1998).[9] The crucial disputed element at this stage of the case

is whether Defendant's alleged publication to the Coast Guard was privileged.

As discussed above, "by virtue of 1 V.I.C. § 4, the A.L.I. Restatements are the rules of

decisions in the Virgin Islands absent local law to the contrary." Ross v. Bricker, 770 F. Supp.

1038, 1042 (D.V.I. 1991). The Second Restatement of Torts provides for an absolute privilege

that protects statements made to law enforcement in order to initiate a criminal investigation

from any claim of defamation. In section 587, the Restatement provides that:

> A party to a private litigation or a private prosecutor or defendant in a criminal
> prosecution is absolutely privileged to publish defamatory matter concerning
> another in communications preliminary to a proposed judicial proceeding, or in
> the institution of or during the course and as a part of, a judicial proceeding in
> which he participates, if the matter has some relation to the proceeding.

RESTATEMENT (SECOND OF TORTS) § 587 (1977). Comment b to section 587 elaborates that the

rule stated in this section applies "to information given and informal complaints made to a

prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution

whether or not the information is followed by a formal complaint or affidavit." Id. cmt. b.

The Second Restatement of Torts, in section 598, also provides for a conditional privilege

that protects a limited set of statements from liability for defamation: "An occasion makes a

publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important public interest, and

---

[9] A plaintiff may also assert a claim for slander or libel per se against a defendant "who publishes
a slander that ascribes to another conduct, characteristics or a condition that would adversely
affect his fitness for the proper conduct of his lawful business, trade or profession, or of his
public or private office, whether honorary or for profit . . . ." RESTATEMENT (SECOND) OF TORTS
§ 573; see also Ross v. Bricker, 770 F. Supp. 1038, 1042 (D.V.I. 1991) (citing RESTATEMENT
(SECOND) OF TORTS § 573 (1977)). If plaintiff establishes a per se violation, the defendant "is
subject to liability without proof of special harm." RESTATEMENT (SECOND) OF TORTS § 573.

(b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true." RESTATEMENT (SECOND OF TORTS) § 598 (1977). The conditional privilege essentially protects reporting a matter of public interest in good faith, and may be forfeited if the privilege is abused.[10] In Comment e, titled "Communication to public officials," section 598 specifically distinguishes "[f]ormal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal" as subject not to a conditional, but an absolute privilege. Id. cmt. e.

There is a dearth of Virgin Islands cases addressing the absolute privilege for statements to law enforcement concerning violations of criminal law, and thus the Court relies heavily on the pertinent sections of the Restatement to resolve this issue. On the basis provided in the Second Restatement of Torts, the Court finds that Defendant's report to the Coast Guard that Plaintiff was operating a boat while intoxicated is protected by an absolute privilege. First, 25 V.I.C. § 297a(a) and 46 U.S.C. § 2302(c)(2) are the respective Virgin Islands and federal law prohibiting the operation of a motor boat or vessel while under the influence of alcohol. And second, as provided for in 33 C.F.R. §§ 1.07-90-1.07-95 and 33 C.F.R. §§ 95.001-95.050, the Coast Guard may enforce criminal laws and seek criminal prosecution for boating under the

_____

[10] The conditional privilege,
>   may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter (see §§ 600-602); by the publication of the defamatory matter for some improper purpose (see § 603); by excessive publication (see § 604); or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged. (See § 605A).

RESTATEMENT (SECOND) OF TORTS § 598 cmt. a (1977) (referring to other provisions of the same Restatement).

influence of alcohol. Defendant's reporting to the Coast Guard of its belief that Plaintiff was

operating a boat under the influence constitutes the reporting of a complaint to a "proper officer

preliminary to a proposed criminal prosecution." RESTATEMENT (SECOND) OF TORTS § 587 cmt.

b (1977). As such, the statement invokes the absolute privilege that protects it from claims of

defamation, which, in turn, requires dismissal of all of Plaintiff's claims for defamation. [11]

### E. ERISA and the Alleged Deprivation of Benefits

As Defendant's arguments relating to Plaintiff's ERISA claim depend upon a summary

judgment standard of review, the Court is unable to consider Defendant's contentions at this

point. The assertion that Plaintiff's firing did not lead to any actionable deprivation of his

pension benefits would require the Court to examine material both outside the Complaint and the

limited exceptions that allow the Court to look beyond it. See City of Pittsburgh v. West Penn

Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (addressing which materials a court may consider

---

[11] Although the it has found that Defendant's statements to the Coast Guard for the purposes of initiating a criminal complaint are absolutely privileged, the Court would be remiss if it did not address the lone instance of potentially contrary precedent. While not cited by either party, Flanders v. Shell Seekers applied a conditional privilege to statements made to both police and employees. See Flanders v. Shell Seekers, 39 V.I. 63, 69-70 (V.I. Terr. Ct. 1998). There, the Territorial Court concluded that one defendant's "limited communications to police and his employees were made to protect defendants' viable business interest, and as such, were [conditionally] privileged." Id. The focus in Flanders on statements to employees and in the employer's "business interests" properly invoked a conditional privilege, but the Court's inclusion of the statements made to police officers in the same breath indicates a lack of recognition of this special circumstance where the absolute privilege may apply. While the court did analyze the statements under a conditional privilege analysis, it certainly did not find that an absolute privilege to protect such statements was out of the question. Thus, the Court finds that the Territorial Court fell short of addressing whether an absolute privilege would apply to statements made to law enforcement in order to initiate a criminal proceeding. On this point, the Court finds sections 587 and 598 of the Second Restatement of Torts authoritative. The absolute privilege for informal or formal statements to initiate a criminal proceeding applies here.

when deciding a motion to dismiss). Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's ERISA claim (Count V).

## V. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss is granted as to Plaintiff's WDA, common law wrongful discharge, and defamation claims. The Motion is denied as to his ERISA claim.

An appropriate order follows.